## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK F. SCHNITTKER,

     Plaintiff,

     v.                              Case No. 23-2282-TC-RES

TRUCKS FOR YOU, INC. ET AL.,

     Defendants.

## MEMORANDUM AND ORDER

     This matter comes before the Court on Plaintiff Mark F. Schnittker's Motion to Exclude Defendant's Untimely Production of Medical Records.  ECF No. 94.  Defendants Trucks For You, Inc. ("Defendant TFY") and John Williams ("Defendant Williams") (collectively, "Defendants") oppose the Motion.  ECF No. 96.  On August 30, 2024, Plaintiff filed a reply in further support of the Motion.  ECF No. 97.  For the reasons explained below, the Motion is denied.

## I.     BACKGROUND

     Plaintiff filed this case on June 22, 2023, asserting negligence claims against both Defendant Williams and Defendant TFY and a respondeat superior claim against Defendant TFY.  ECF No. 1.  Highly summarized, Plaintiff alleges that on February 12, 2022, Defendant Williams, the driver of a commercial vehicle, made an improper left turn into the path of Plaintiff's vehicle, causing a collision from which Plaintiff sustained injuries.  *Id.* at 2-3.  Plaintiff further alleges that Defendant Williams was acting within the course and scope of his employment or agency with Defendant TFY and was driving a tractor and trailer owned by TFY at the time of the collision.  *Id.* at 2, 5.

The initial Scheduling Order set a deadline of March 8, 2024, for the close of discovery and required the supplementation of initial disclosures "40 days before the deadline to complete all discovery[.]"  ECF No. 12 at 4.  On March 29, 2024, the Court entered a Second Amended Scheduling Order, which moved the close of discovery to June 21, 2024.  ECF No. 68.  Because that Amended Scheduling Order did not alter the 40-day supplementation deadline, supplementation at that time was required 40 days before the close of the new discovery deadline or May 13, 2024.[1]

On October 12, 2023, Defendant TFY served responses to Plaintiff's First Requests for Production ("RFPs").  ECF No. 79-4.  RFP No. 4 sought copies of all of Plaintiff's medical records and related records "in the possession of Defendant or her [sic] counsel generated by any healthcare provider." *Id.* at 2. Defendant TFY responded by stating that "Defendant does not have any documents currently in its possession or control that were not provided by Plaintiff's counsel. Defendant will produce to Plaintiff any of plaintiff's medical records independently obtained through discovery." *Id.*  Although Plaintiff states that he served "a request for production at the outset of this case asking for Defendants, plural, to produce any medical records," ECF No. 94 at 2, Plaintiff does not identify any RFP served on Defendant Williams—as opposed to Defendant TFY—seeking production of Plaintiff's medical records. *See, e.g.,* ECF No. 79-4 (RFP responses from only Defendant TFY).

---

[1]       On June 27, 2024, the Court entered a Third Amended Scheduling Order, which moved the close of discovery to September 12, 2024.  ECF No. 90.  The Third Amended Scheduling Order did not specifically extend the earlier supplementation deadline because it had passed more than a month before the Third Amended Scheduling Order was entered.  For any supplementation not previously required, the Third Amended Scheduling Order required any final supplementation on or before August 5, 2024, 40 days before that new close of discovery deadline.

On December 18, 2023, Plaintiff provided Defendants with an authorization to obtain Plaintiff's medical records. ECF No. 79 at 3. Plaintiff states—and Defendants do not dispute—that Plaintiff's medical records and related billing records were received by the defense in January 2024 but not produced to Plaintiff until June 14 and 17, 2024. ECF No. 94 at 1. Those records include Plaintiff's vision records and billing records, which Plaintiff states will serve to support Defendants' theory of comparative fault in that Defendants contend Plaintiff's vision was impaired on the date of the collision and contributed to the circumstances causing it. *Id.*

On May 10, 2024, Defendants served their Joint Expert Witness Disclosures. ECF No. 73. On June 20, 2024, Plaintiff filed his original motion to strike Defendants' non-retained experts and to exclude Plaintiff's medical records. ECF No. 79. In that motion, Plaintiff stated that Defendants' May 10, 2024 expert disclosures included "several doctors that have treated Plaintiff eyes and vision . . ." *Id.* at 1 (language original). The motion additionally contained excerpts from the May 8, 2024 deposition of Plaintiff, which included specific questions regarding Plaintiff's vision and his complaints to his eye doctor about vision issues. ECF No. 79-5. Despite D. Kan. Rule 37.1(a)'s requirement for the parties to request a discovery conference prior to filing any disputed discovery-related motion, Plaintiff did not request a discovery conference and asked "that the informal conference requirement be excused in this instance." ECF No. 79 at 2.

The Court took up the issues raised in that motion at a status conference the following day. ECF No. 82 (order setting status conference). During the status conference, Plaintiff's counsel confirmed that he knew during Plaintiff's May 8, 2024 deposition that Defendants had medical records that were not provided to Plaintiff based on defense counsel's questioning. *Accord* ECF No. 79 at 3 (Plaintiff's motion to strike, making a similar statement—specifically, that "[w]hile it is not known when exactly the defense obtained medical records it disclosed on June 14, 2024, it

was certainly prior to May 8, 2024 when Plaintiff was questioned at his deposition about records that had not been produced.").

Ultimately, as stated during the hearing and memorialized in orders following the hearing, the Court denied as moot Plaintiff's motion as it pertained to the treating physicians Defendants designated as non-retained experts after this portion of the dispute was resolved among the parties during the status conference. ECF No. 84. The Court denied without prejudice Plaintiff's motion to exclude medical records. ECF Nos. 84-85. The Court ordered the parties to meet and confer in compliance with the guidance provided by the Court during the status conference. In an attempt to address any prejudice to Plaintiff from the production of these medical records, the Court directed Plaintiff to discuss with Defendants what remaining discovery Plaintiff required and dates for this discovery, specifically including whether Plaintiff needed an independent medical examination ("IME") and/or additional depositions. The Court explained that any additional discovery would need to be completed "in very short order."

The present Motion explains that the parties met and conferred in compliance with the Court's order on June 24, 2024. ECF No. 94 at 2. On June 26, 2024, the parties filed a joint motion to amend the scheduling order, which also sought an extension to the discovery deadline for certain remaining limited discovery. ECF No. 89. The Motion stated that Plaintiff still planned to file a motion to exclude the untimely produced medical records. *Id.* at 2. The Court granted the Motion and extended the discovery deadline up to and including September 12, 2024, for the sole purpose of allowing the parties additional time to complete the remaining discovery specified in their joint motion. ECF No. 90 at 1.

Nearly two months later, on August 20, 2024, Plaintiff filed the present Motion, which is now before the Court. ECF No. 94. Plaintiff requests that the Court exclude 22 pages of medical

records and three pages of billing records from Eye Care Associates.  ECF No. 94 at 3.  Plaintiff explains that only these documents are at issue because "most" of the other documents produced on June 14, 2024, were "previously produced to the defense by Plaintiff."  *Id.*  There is no explanation for why Plaintiff could produce "most" of these other documents, but not these 25 pages of medical and billing records.

Because of Plaintiff's unexplained delay in filing the Motion and the time-sensitive nature of the relief sought in the Motion, the Court expedited briefing.  ECF No. 95.

## II.    DISCUSSION

Federal Rule of Civil Procedure 26(e) governs supplemental disclosures and responses. The rule requires a party, without court action, to automatically supplement a Rule 26(a) disclosure or a discovery response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  As a sanction for failing to comply with Rule 26(e), Federal Rule of Civil Procedure 37(c)(1) provides that the offending party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Plaintiff relies on Rule 26(e) as the basis for the sanction requested pursuant to Rule 37(c)(1).  ECF No. 94 at 3-5.  But as discussed below, Plaintiff's Motion is untimely.  Moreover, the Motion is unclear as to the conduct that Plaintiff contends violated Rule 26(e), both in terms of (1) the specific discovery request for which each Defendant bore a duty to supplement a response and (2) which Defendant was under a duty to supplement a response.  And even if the Motion were clear as to which party's specific misconduct violates Rule 26(e), any such failures

were harmless because any potential prejudice can be cured.  The Court addresses each of these issues below.

### A.    Timeliness of Plaintiff's Motion

D. Kan. Rule 37.1 governs motions relating to discovery.  D. Kan. Rule 37.1(c) applies to the time for filing discovery-related motions and states in full:

> Any discovery-related motion must be filed within 30 days of the default or service of the response, objection, or disclosure that is the subject of the motion, or, for all other disputes, within 30 days after the movant knew or reasonably should have known of the potential dispute. The court may deny any motion filed after that 30-day period as untimely unless the movant demonstrates diligence in attempting to resolve the specific discovery dispute at issue.

The rationale behind the 30-day rule is to enable the Court to address discovery issues "while they are still fresh, and in turn expedite litigation."  *Willmore v. Savvas Learning Co. LLC*, No. 22-2352-TC-ADM, 2024 WL 3756277, at *23 (D. Kan. Aug. 12, 2024).  "This district has consistently construed and applied the 30-day period as beginning when specific information *first* leading to a dispute is discovered."  *Id.* (emphasis in original).

Judges in this District have applied D. Kan. Rule 37.1's 30-day rule to Rule 37(c) motions to exclude when the moving party did not seek relief within 30 days of service of the deficient supplemental response or disclosure.  *See Kaw Drive, LLC v. Secura Ins.*, No. 19-2238-JWL, 2020 WL 5993264, at *1 (D. Kan. Oct. 9, 2020) (declining to exclude witnesses listed on an untimely supplemental Rule 26(a)(1) disclosure, finding that the moving party had waived its objection to the supplemental disclosure by failing to take action within 30 days of service); *Escalante v. LifePoint Hosp. Inc.*, No. 2:17-CV-02035-HLT, 2019 WL 2743910, at *4 (D. Kan. July 1, 2019) (denying a motion to exclude a belated disclosure of the plaintiffs' computation of damages and noting that defendant "did not act upon this failure and has therefore arguably waived any

argument regarding the insufficiency of Plaintiffs' disclosure and discovery responses").[2]   The same rationale supports applying the 30-day rule to Rule 37(c) motions to exclude—to enable the Court to timely and efficiently address discovery issues when they arise and to avoid eleventh-hour disputes and motion practice that unnecessarily derail a case schedule, which is what has happened in this case.  *See generally Escalante*, 2019 WL 2743910, at *4 (explaining that a dilatory movant "cannot now ambush Plaintiffs at the summary judgment stage without having raised these issues earlier" because "Defendant could have, and should have, submitted this issue to the Court long before this point in the proceedings").

Plaintiff knew as early May 8, 2024, based on defense counsel's questioning during Plaintiff's May 8, 2024 deposition, that Defendants had medical records that were not provided to Plaintiff, making a discovery motion due by June 7, 2024.  Even if the Court construed the triggering events as the dates on which Defendants produced the records at issue, the Motion still would be untimely.  According to Plaintiff, Defendants produced the medical records on June 14 and 17, 2024.  ECF No. 94 at 1.  The Motion does not specify whether the vision records were produced on the 14th or 17th.  Even assuming the records were produced on the later June 17th date, Plaintiff's Motion should have been filed on or before July 17, 2024.  Under either calculation, Plaintiff's Motion was filed out of time on August 20, 2024.  ECF No. 94.

Notably, Plaintiff's first motion seeking to exclude the vision records was filed on June 20, 2024, within the 30-day timeframe if the supplemental production is considered the triggering

---

[2]         Those cases relied on a prior version of D. Kan. Rule 37.1's 30-day Rule.  The then-existing rule, D. Kan. Rule 37.1(b), stated that "[a]ny motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived."   In contrast, Rule 37.1(c) contains more expansive language, referring to "[a]ny discovery-related motion," rather than solely motions to compel.

event.  *See* ECF No. 79.  But that motion failed to comply with a different local rule, D. Kan. Rule 37.1(a), which requires the moving party to arrange for a discovery conference with the Magistrate Judge before filing any discovery-related motion.  The motion acknowledged the omission.  *Id.* at 2 ("Plaintiff asks that the informal conference requirement be excused in this instance.").  The Court ultimately convened a status conference and denied this aspect of the motion without prejudice to refiling, but Plaintiff did not request, and the Court did not grant, any extension of the Rule 37.1(c) deadline.  *See* ECF No. 84.  The Court would have been unlikely to extend this deadline and certainly would not have extended the deadline to just weeks prior to the close of discovery because the outcome of the motion—as explained below—is simply that the Court is allowing Plaintiff additional limited fact discovery to cure any prejudice to Plaintiff.  This discovery could have occurred within the discovery period had Plaintiff simply decided to take the discovery or if Plaintiff had timely filed his Motion.

Plaintiff also has not shown diligence in attempting to "bridge the gap" between when the 30-day period expired to when Plaintiff filed the Motion.  *See Willmore*, 2024 WL 3756277, at *24 (explaining that the moving party must show diligence up until it files the discovery-related motion); D. Kan. Rule 37.1(c) ("The court may deny any motion filed after the 30-day period as untimely unless the movant demonstrates diligence in attempting to resolve the specific discovery dispute at issue.").  The parties met and conferred in compliance with the Court's order on June 24, 2024.  ECF No. 94 at 2.  But Plaintiff details no further efforts to attempt to resolve this dispute and offers no explanation as to why he waited nearly two months to file the Motion.

Plaintiff does not address compliance with D. Kan. Rule 37.1(c), including attempting to show diligence, and Plaintiff provides the Court with no basis from which it could conclude the present Motion is timely.  Accordingly, the Court denies the Motion as untimely under D. Kan.

Rule 37.1(c).  Even if the Motion were timely, however, the Court still would deny it on its merits for the reasons explained below.

### B.      Defendants' Alleged Conduct Violating Rule 26(e)

Plaintiff seeks the exclusion of the medical records because of Defendants' untimely supplementation of an unspecified RFP.  *See* ECF No. 94 at 1-2.[3]  Plaintiff does not identify by number the specific RFP response that he contends required supplementation.  Rather, the opening Motion cites to an entire page of RFP responses, specifically "Doc. 79-4 p. 2."  ECF No. 94 at 2 ("Plaintiff served a request for production at the outset of this case asking for Defendants to produce any medical records they obtained that were not provided by Plaintiff.  Doc 79-4, p. 2.").

ECF No. 79-4 is Defendant TFY's Responses to Plaintiff's First Request for Production, which was filed as an exhibit to Plaintiff's prior motion to strike and exclude.  Page 2 contains Defendant TFY's responses to RFP Nos. 3-5.  RFP No. 4 seeks production of all of Plaintiff's medical records, including "any and all other records regarding Plaintiff in the possession or Defendant or her [sic] counsel generated by any healthcare provider," among other categories of documents, and it is the most similar to how Plaintiff describes the RFP at issue—as one requesting "Defendants to produce any medical records they obtained that were not provided by Plaintiff." ECF No. 94 at 2; ECF No. 79-4 at 2.[4]

---

[3]      A subheading in the Motion states that "Defendants' failure to satisfy the requirements of Rule 26(e) and Rule 26(a)(2)(C) is prejudicial to Plaintiff, and the medical records should not be usable at trial or in any motion." ECF No. 94 at 3.  Rule 26(a)(2)(C) governs expert witnesses who need not provide a written report, a subject not at issue in the present Motion.  The Court presumes this was an error in that Plaintiff's previously filed motion—which sought more expansive relief, including relief related to expert disclosures—contained the same subheading. *See* ECF No. 79 at 7.

[4]      RFP No. 3 seeks bills of lading for shipments transported by Defendant Williams, and RFP No. 5 seeks copies of documents reflecting money or expenses Plaintiff has incurred. ECF No. 79-4 at 2.  Conceivably, some of the records at issue also could be responsive to RFP No.

The Court will address each Defendant's conduct with regard to RFP No. 4.

### 1. Defendant Williams' Alleged Rule 26(e) Violation

Although Plaintiff contends both Defendants were under an obligation to have produced Plaintiff's medical records in response to RFPs, Plaintiff cites *only* to Defendant TFY's responses to the RFPs, which were filed as an exhibit to Plaintiff's prior motion to strike and exclude.[5]  ECF No. 94 at 2.  Plaintiff was required to file the discovery responses that are in dispute.  D. Kan. Rule 37.1(b) ("Discovery-related motions must be accompanied by copies of the notices of depositions, the portions of the interrogatories, requests, or responses in dispute.  Motions directed at subpoenas must be accompanied by a copy of the subpoena in dispute.").  Because Plaintiff fails to cite to any Rule 26(a) disclosure or discovery response that Defendant Williams was required to

---

5—to which Defendant TFY indicated it would supplement if it obtained responsive documents—but in the absence of more specific briefing, the Court focuses on RFP No. 4 because it clearly implicates the vision records at issue.

Further confusing the matter, Plaintiff's reply brief inexplicably cites to an entirely different page of Defendant TFY's responses to the RFPs—specifically, "Doc 79-4 p. 3." Page 3 encompasses Defendant TFY's responses to RFP Nos. 6-9.  Plaintiff's vision records might be responsive to multiple RFPs listed on page 3, but Plaintiff did not cite this page or any of these RFPs in his opening Motion.  *See* ECF No. 94 at 2 ("Plaintiff served a request for production at the outset of this case asking for Defendants to produce any medical records they obtained that were not provided by Plaintiff.  Doc 79-4, p. 2.").  The Court will not consider an argument—particularly a new alleged basis for the imposition of sanctions—raised for the first time in a reply brief.  *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

[5]     The Motion itself injects uncertainty in that it uses both "Defendant" (singular) and "Defendants" (plural) interchangeably without addressing which Defendant was under an obligation to respond to the unspecified RFP.  As one example of the several instances in which Plaintiff uses the singular form, the Motion is titled as a "Motion to Exclude *Defendant's* Untimely Production."  ECF No. 94 at 1 (emphasis supplied).  Plaintiff also states that the RFP at issue was served on "Defendants," plural, but Plaintiff cites to only Defendant TFY's responses to the RFPs.  *Id.* at 2.  Nevertheless, Plaintiff's motion explicitly seeks Rule 37(c) sanctions as to "Defendants," plural.  *See id.* at 3 (heading in the argument section stating that "Defendants' failed to time [sic] supplement its discovery responses and/or Rule 26(e) disclosures by producing medical records on June 14, 2024").

supplement, the Court cannot find that he committed a Rule 26(e) violation on the present record. Because the Court cannot find that Defendant Williams failed to "provide information or identify a witness as required by Rule 26(a) or (e)," Rule 37(c) sanctions are unavailable as to him. However, even if Plaintiff had served a similar RFP on Defendant Williams and received a similar response, the Court still would deny the Motion for the reasons explained in the next section.

## 2.    Defendant TFY's Alleged Rule 26(e) Violation

Defendant TFY does not dispute that Plaintiff served an RFP seeking production of Plaintiff's medical records, that its counsel was in possession of the records for months prior to producing them, or that it was required to supplement its prior production.[6]  *See generally* ECF No. 96.  Indeed, TFY's response explicitly stated that it *would* supplement: "Defendant will produce to Plaintiff any of plaintiff's medical records independently obtained through discovery." ECF No. 79-4 at 2.  But Defendant TFY does dispute that its supplementation was untimely.  ECF No. 96 at 2 ("As an initial matter, defendants contest that the disclosure of the visions records was untimely pursuant to Rule 26(e).").

"Whether a supplement is timely depends on the facts and circumstances of each case" and while there is no brightline rule, supplementation must be reasonable based on when the information was available to the party supplementing.  *Willmore v. Savvas Learning Co. LLC*, 344

---

[6]    As stated above, Rule 26(e)(1)(A) requires supplementation in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  "Generally, information is otherwise made known if it is in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response."  *Lenexa 95 Partners, LLC v. Kin, Inc.*, No. 20-2367-JWB-ADM, 2021 WL 2477008, at *2 (D. Kan. June 17, 2021) (internal quotations omitted).  In this case, the parties did not brief the issue of whether Plaintiff's own vision records were "otherwise made known" to Plaintiff, and so the Court does not address it.

F.R.D. 546, 562-63 (D. Kan. 2023).   Here, based on the circumstances in this case, Defendant TFY's supplementation was untimely for two reasons.

*First,* obtaining responsive documents in January 2024 and failing to produce them until mid-June—based on an unexplained oversight—does not constitute a timely supplementation under Rule 26(e).   Although Defendants suggest the production was timely because "discovery was still open, and defendants were within the time to supplement their discovery responses," the fact that discovery is ongoing is not a basis to withhold otherwise responsive documents for months.   ECF No. 96 at 2.

*Second*, Defendant TFY was past the deadline for supplementation in the applicable scheduling order.   Defendant does not address that the supplementation deadline in effect when Defendant TFY obtained these documents was May 13, 2024.   Defendant does not allege that it met this deadline, which is a deadline requiring the identification of "all witnesses and exhibits that probably will be or even might be used at trial so that the opposing party can decide whether to pursue follow-up discovery before the time allowed for discovery expires."   ECF No. 12 at 4. While the close of discovery was ultimately extended,[7] which allowed for an extended time for any new supplementation, Defendant does not explain its failure to comply with the scheduling order supplementation deadline in effect during the months it had these responsive documents in its possession.

The Court therefore finds that Defendant TFY violated Rule 26(e).   The Court now turns to Plaintiff's request for Rule 37(c) sanctions.

---

[7]        Even if the Court were to find that this extension to the close of discovery somehow excused a party's failure to comply a supplementation deadline that had already passed, the supplementation deadline in the scheduling order is not an invitation for a party to withhold responsive documents or information that could and should have been supplemented sooner.

### C.      Substantial Justification or Harmlessness under Rule 37(c)(1)

The Court has discretion to determine when a Rule 26(e) violation is substantially justified or harmless under Rule 37(c)(1).  *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).  In making this determination, the Court weighs these factors: "(1) the prejudice or surprise to the party against whom the [evidence] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [evidence] would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 938 (10th Cir. 2022) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).  The non-moving party bears the burden to show that the Rule 26(e) violation was substantially justified or harmless.  *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 19-4007-DDC, 2024 WL 277893, at *22 (D. Kan. Jan. 25, 2024) (citing *Hirpa v. IHC Hosps., Inc.*, 50 F. App'x 928, 932 (10th Cir. 2002)).

Defendant TFY has carried its burden to show that the belated production of Plaintiff's own vision records while discovery is still ongoing is harmless.  The Court would reach the same conclusion as to Defendant Williams if he were under an obligation to have produced the records, which, as explained above, is not apparent on this record.[8]  To be clear, the Court does not condone or ratify Defendant TFY's untimely production.  That said, many of the arguments Plaintiff raises concerning prejudice are now also the result of Plaintiff's own delay because Plaintiff declined to simply take any necessary discovery related to these documents and instead waited nearly two months—until the close of discovery—to file a motion to exclude his own vision records.  The Court addresses the relevant factors below and explains why they require denial of the Motion.

---

[8]      Although the Court cannot find a Rule 26(e) violation as to Defendant Williams, the Court nevertheless refers to "Defendants," plural, in this section because Defendants have filed a joint response brief asserting arguments on behalf of both Defendants.

1.     **Surprise to Plaintiff**

In most cases, the Court addresses prejudice and surprise collectively because they are related.  In this case, however, the Court addresses surprise separately because of the unique circumstance that the violation at issue involves production of Plaintiff's own medical records to Plaintiff.  Under these circumstances, the Court cannot find that the belated production of Plaintiff's own vision records creates any surprise to Plaintiff.  As Defendants note, Plaintiff does not contend that he was unaware of his own medical records, conditions, and treatment, as described in the 22 pages of vision records, or that he was unaware of the three pages of billing records.  ECF No. 96 at 1.  Indeed, Plaintiff's belatedly produced vision records likely were already within Plaintiff's own possession, custody, or control.[9]

Since the beginning of this litigation, Plaintiff has recognized the relevance of his medical and billing records, including those related to his eyes.  Plaintiff's own Rule 26(a)(1) Initial Disclosures[10] lists documents that "are relevant to the above-referenced case," and Plaintiff includes "Plaintiff's medical records" and "Plaintiff's medical bills" as two categories of relevant

---

[9]     *See Adams v. Adient US LLC*, No. 120CV01197JTFJAY, 2024 WL 992495, at *3 (W.D. Tenn. Mar. 7, 2024) ("it is clear that Plaintiffs have a legal right to obtain their own medical records on demand" (internal quotations omitted)); *Lapine v. City of Detroit*, No. 19-13165, 2023 WL 3940441, at *1 (E.D. Mich. May 8, 2023) ("Plaintiff has the legal right to obtain his own medical records. That he is not currently in possession of his records is not reason to withhold production of the documents."); *Amoah v. Mckinney*, No. CV 4:14-40181-TSH, 2016 WL 1698267, at *3 (D. Mass. Apr. 27, 2016) ("Applied in the context of an individual's medical records, the patient is deemed to be in control of such records because he may request the files at any time, and because, by either granting or denying consent, he may determine who shall have access to them." (internal quotations omitted)).

[10]    Copies of the parties' respective initial disclosures were provided to the Court in advance of the scheduling conference.  *See* ECF No. 6 (Initial Order Regarding Planning and Scheduling, directing the parties to provide copies of their Rule 26(a)(1) disclosures to the Magistrate Judge in advance of the scheduling conference).

information.  Under the category of "Witnesses," Plaintiff listed "Dustin Martin, OD[,] Eye Care Associates" and stated that this witness "has knowledge of the medical treatment provided to Plaintiff as a result of the subject motor vehicle collision and his pain and suffering."  Plaintiff stated that he "is still accumulating documents relevant to the case and will supplement the following disclosures accordingly."  Notably, the scheduling order required the parties "exchange copies of the documents described in their Rule 26(a)(1) disclosures" without the need for a formal RFP.  ECF No. 12 at 4.

There is no credible argument that Plaintiff is surprised that Eye Care Associates may be the source of relevant and responsive information in this litigation, including medical and billing records that Plaintiff himself did not produce despite his promise to supplement his own production of these records.  On this record, the Court cannot find that Plaintiff should be surprised about his medical records when he indicated such records were relevant at the beginning of the case.

### 2.    Prejudice to Plaintiff

Plaintiff articulates three ways in which he has been prejudiced by this belated production. First, Plaintiff states that without the underlying documents, Plaintiff could not anticipate that Defendants would assert that Plaintiff's own comparative negligence, including his eyesight, played a role in the collision.  Second, Plaintiff would have engaged in certain fact discovery had these documents been timely produced.  And third, Plaintiff may have engaged a different expert. The Court evaluates each claim of prejudice below and ultimately finds that at most, Plaintiff has potentially experienced minimal prejudice capable of being cured by allowing limited additional fact discovery.

### a.    Comparative Fault[11]

Plaintiff's first prejudice argument essentially claims that because the production of a discrete subset of Plaintiff's own medical records to Plaintiff was untimely, Plaintiff was unable to anticipate that his own eyesight would play a role in Defendants' theory of comparative fault. ECF No. 94 at 4.  This is an unsuccessful argument for two reasons.

*First,* the plain language of RFP No. 4 is not limited to or even aimed at the issue of comparative fault.  In fact, RFP No. 4 does not even mention comparative fault.  Specifically, the RFP seeks:

> Legible copies of all medical records, reports and correspondence from any physicians regarding Plaintiff's care and treatment, the narrative results of any and all diagnostic tests to Plaintiff (including, but not limited to, x-rays, nuclear bone scans, MRIs, CT scans, etc.), expert medical reports regarding Plaintiff's injuries, and any and all other records regarding Plaintiff in the possession of Defendant or her counsel generated by any healthcare provider.

ECF No. 79-4 at 2.  Had Defendant TFY timely produced Plaintiff's own medical records to Plaintiff, the production would not have informed Plaintiff about Defendant TFY's theory of comparative fault.  The RFP simply does not specifically seek this information.  This RFP stands in contrast to a contention interrogatory asking Defendant TFY to identify the facts supporting its comparative fault defense.  *Compare with Lenexa 95 Partners*, 2021 WL 2477008, at *2 (ruling on a Rule 37(c) motion to strike involving a contention interrogatory requiring the defendant to identify facts supporting its failure-to-mitigate defense).

---

[11]    For the first time in his reply brief, Plaintiff states in closing that "Defendant should not be allowed to amend their comparative fault designation this late in the game (although they have made no formal attempt to do so as of this date)."  ECF No. 97 at 3.  Although it is unclear whether Plaintiff is requesting relief or simply making an observation, the Court would deny any request for a ruling regarding Defendants' comparative fault designation because it was not raised until the reply brief and because it is premature insofar as Defendants have not requested to amend their comparative fault designation.  *See Harrell*, 642 F.3d at 918.

Plaintiff's RFP No. 4 also did not ask Defendant TFY to produce documents on which Defendant TFY intended to rely in support of its comparative fault defense.[12] Responses to those types of discovery requests would have provided information regarding Defendant TFY's theory of comparative fault, including the factual basis underlying the defense. However, RFP No. 4 seeks production of all of Plaintiff's medical records—which could be relevant to multiple issues in this case. Because RFP No. 4 is not targeted at seeking information regarding comparative fault, the Court cannot find that the untimely production is "Defendant's belated attempt to add a new theory of comparative fault." ECF No. 97 at 2.

In arguing prejudice based on comparative fault, Plaintiff relies on issues extending beyond Defendant TFY's failure to timely supplement its production. Plaintiff cites two entire pages of Defendant Williams' interrogatory responses and two entire pages of Defendant TFY's interrogatory responses, both filed in conjunction with Plaintiff's prior motion, which requested more expansive relief. *See* ECF No. 94 at 4 (citing ECF No. 79-6 at 5-6; 79-7 at 4-5).[13] But Plaintiff has not argued that Defendants failed to timely supplement any of these interrogatory

---

[12]     Notably, Plaintiff served an RFP seeking this information. RFP No. 8 seeks "[a]ll documents that materially support any claims of comparative fault asserted by Defendant or that Defendant intends to assert." ECF No. 79-4 at 3. But this RFP response appears on page 3 of Defendant TFY's responses. The briefing does not reference this RFP by number (or any RFP, for that matter), and the opening Motion describes the relevant RFP as "asking Defendants to produce any medical records they obtained that were not provided by Plaintiff," a description more in line with RFP No. 4. ECF No. 94 at 2. The Motion goes on to cite page 2 of Defendant TFY's responses, which contains Defendant TFY's response to RFP No. 4, but not page 3.

[13]     Specifically, the Motion states, "Plaintiff asked Defendants for their contentions of fault at the outset of this case, and Defendants' responded with various theories of fault. Doc. 79-6, pp. 5-6; Doc. 79-7, pp. 4-5. Defendants mentioned nothing about Plaintiff's vision playing a role in the crash. Defendants also mentioned nothing about Plaintiff's vision in its comparative fault designation. Doc. 19. It was not until this late disclosure that some vague—and still not completely disclosed—theory of fault against Plaintiff was raised due to his eye related vision issues." ECF No. 94 at 4.

responses, and they do not form the basis for Plaintiff's request to exclude vision records produced in response to an entirely different discovery request.

*Second*, Plaintiff has been on notice from the outset that Defendants allege he was comparatively at fault. Defendants specifically identified Plaintiff in their Comparative Fault Identification, ECF No. 19, and Defendants' Affirmative Defense No. 10 specifically states that if "Plaintiff sustained any injuries or damages, . . . then said injuries or damages were caused or directly contributed to be caused by the negligence or fault of Plaintiff . . . ." ECF No. 5 at 7. While Plaintiff is correct that none of these documents specifically reference Plaintiff's vision, they certainly put Plaintiff on notice that his own conduct would be at issue in the litigation.

### b.    Additional Fact Discovery

Plaintiff next argues that if the documents had been timely produced, Plaintiff may have engaged in additional fact discovery, including "to speak with and/or depose Plaintiff's treating eyecare providers," or obtain an IME. ECF No. 94 at 4, 5. Plaintiff is well aware of his own eye conditions and therefore, capable of deciding what, if any, fact discovery he needs to conduct regarding his own medical conditions. Plaintiff's counsel could have scheduled an IME of their own client at any time and presumably did speak with Plaintiff's treating eyecare providers since they were identified in Plaintiff's Rule 26 disclosures. Notably, Plaintiff does not identify any steps he has taken to obtain that fact discovery since the documents were disclosed.

To the extent there is any prejudice related to fact discovery on the issue of Plaintiff's vision, any such prejudice can be cured by slight modifications to the existing schedule to allow limited discovery on these fact issues.

### c.    New Experts

Finally, with regard to expert discovery, Plaintiff claims that the timely production of these 25 pages of documents may have caused him to "potentially name a new expert on the topic." ECF No. 94 at 5.  This claim of prejudice is wholly unsupported.  Plaintiff now has had months to review these 25 pages of documents and Plaintiff does not identify any steps he has taken to identify what type of expert he needs in response to these 25 pages, who would be disclosed to provide expert testimony or the substance of that testimony.[14]

The Scheduling Order in this litigation never provided for a third round of expert disclosures.  *See, e.g.,* ECF No. 12.  Nonetheless, on July 31, 2024, Plaintiff filed a Notice of Service of Plaintiff's Rebuttal Expert Disclosure, which states that on July 22, 2024, Plaintiff served his Rebuttal Expert Witness Disclosure.  ECF No. 91.  To the extent Plaintiff believed that rebuttal expert testimony was required, Plaintiff does not explain why he did not serve any rebuttal expert testimony at that time.

---

[14]    The Court notes that in an email exchange between the parties, defense counsel indicated that Defendants were not retaining an expert on this issue and would instead use the medical records to cross-examine Plaintiff directly.  The email exchange, attached as an exhibit to Plaintiff's prior motion, states:

> What I can tell you is that we will use these prior medical records when questioning Mr. Schnittker.  These are vision issues he reported to his doctors.  We have asserted comparative fault and Mr. Schnittker has testified he did not see a trailer being pulled by our client.  A jury can infer from the records that he might not have seen the trailer because of his existing vision issues.  I do not need to hire a medical expert to say this.

ECF No. 79-3 at 1.

On this record, Plaintiff has failed to establish any prejudice tied to a possibility that after reviewing 25 pages of his own medical and billing records he might have designated some unknown expert to provide unspecified expert analysis.

### 3. Ability to Cure Prejudice

Even assuming there is any prejudice to Plaintiff, the Court can cure the prejudice by allowing additional time for Plaintiff to take the limited fact discovery he contends he requires. Although Plaintiff argues that "it is now too late" for this discovery, this is a problem of Plaintiff's own making by waiting months—while discovery was still ongoing—before filing the present Motion.

Specifically, when the Court first addressed this issue at the June 21, 2024 status conference, it encouraged the parties to discuss what discovery Plaintiff required to cure any prejudice resulting from the belatedly produced vision records. Subsequently, after the parties met and conferred, they filed a joint motion to amend the scheduling order on June 26, 2024, which listed certain additional discovery, but none of appeared aimed at issues stemming from the untimely production of medical records. *See generally* ECF No. 89. Instead, that joint motion reflected that Plaintiff still intended to file a motion to strike, which was certainly Plaintiff's right, but he inexplicably waited nearly two months to do so—declining to file the Motion until August 20, 2024, when there is a September 12, 2024 deadline for the close of discovery. Plaintiff cannot wait until weeks before the close of discovery to file a motion to strike that argues, in part, that Plaintiff is prejudiced because it is now the close of discovery. Ultimately, the Court can cure any potential prejudice with a brief extension of the fact discovery deadline to provide Plaintiff with another opportunity to take limited fact discovery he contends he requires.

### 4.   Trial Disruption

The parties do not address the extent to which introducing Plaintiff's vision records would disrupt trial.  Instead, they focus on the potential that the parties would lose their trial setting, with Plaintiff concluding that the trial setting would likely be moved if the Court denies the Motion and allows additional limited discovery, and Defendants arguing that the trial setting would not be moved if the Court allowed additional limited discovery.  ECF No. 94 at 4; ECF No. 96 at 3.

At this time, the Court does not find that the trial setting would be impacted by allowing additional limited discovery.  The current February 4, 2025 trial setting has remained unchanged based on the parties' agreement that neither side intends to file dispositive motions.  *See generally* ECF No. 93 (trial order).  It is not apparent that additional limited discovery would extend anywhere close to the trial setting to cause a delay.

### 5.   Bad Faith or Willfulness

Plaintiff does not contend that Defendant TFY acted in bad faith, but he does argue that the failure to produce the medical records was willful.  No. 94 at 5.  Plaintiff makes generalized arguments about defense attorneys, which do not support a finding of willfulness in this specific case by the specific defense counsel in this lawsuit.  The only example Plaintiff gives is that at Plaintiff's deposition "Defendants elected to merely question Plaintiff about what was in the records rather than marking them as exhibits and displaying them to Plaintiff," and "[f]rom this, Plaintiff concludes that Defendants made a willful choice to withhold Plaintiff's medical records." *Id.*

In response, Defendants explain that counsel believed they had produced the vision records shortly after obtaining them and that an "internal oversight led to the documents not being produced."  ECF No. 96 at 3.  Defendants further state that during Plaintiff's deposition, counsel

questioned Plaintiff about almost all of his medical records and did not mark any records as exhibits, which Defendants describe as common practice for defense counsel. *Id.* at 4. Based on this explanation, the Court does not find that Defendant TFY's failure to timely produce the medical records was in bad faith or willful.

## IV.    CONCLUSION

Weighing the above factors, the Court finds that the untimely production of Plaintiff's vision records was harmless under the facts of this case because any purported prejudice can be cured. Accordingly, Plaintiff's Motion is denied.[15]

In its discretion, the Court will allow Plaintiff to take limited factual discovery tied exclusively to the 25 pages of documents at issue. On or before **September 20, 2024**, the parties are directed to meet and confer to discuss the limited additional discovery requested by Plaintiff. On or before **September 23, 2024**, the parties must file a joint motion setting out any remaining discovery that needs to be completed and a narrow timeframe for completing this discovery.

To allow for the completion of this narrow fact discovery, the Court sua sponte moves the deadline for the submission of the pretrial order to **October 7, 2024**. All other deadlines remain unchanged.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Exclude Defendant's Untimely Production, ECF No. 94, is **DENIED**.

**IT IS SO ORDERED.**

---

[15]    Defendants also argued that even if the Court excludes the vision records, Defendants should still be allowed to use the records for impeachment purposes. *See generally* ECF No. 96. Because the Court denies the Motion, it does not address this argument.

Dated: September 18, 2024, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge